# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARCELLE JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2727** |
| **WARDEN DAVID VIATOR** | **SECTION "B"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Darcelle Jackson, is incarcerated in the South Louisiana

Correctional Center in Basile, Louisiana.[2]  Jackson was charged by bill of information

in Orleans Parish on January 16, 1997, with one count of armed robbery, three counts of

attempted armed robbery and one count of attempted second degree murder.[3]  The

Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> Officer Wondell Smith testified at trial that on the evening of November
> 4, 1996, he was on mounted patrol in the French Quarter in the area of Bourbon
> and Toulouse.  He stated that when he heard what he believed to be a gunshot
> from the direction of Dauphine and Toulouse, he proceeded to that location.  He
> further stated that a dark blue pickup truck nearly ran him down at that
> intersection.  He then proceeded to the 900 block of Toulouse where he saw a
> woman lying on her back with a gunshot wound to her head.  He testified that he
> dispatched a description of the perpetrator as a black male wearing blue jeans, a
> white T-shirt, and a baseball cap.
>
> Julie Brown testified at trial that she and a co-worker, Sharon Henson,
> were visiting New Orleans for a medical conference on November 4, 1996.  She
> stated that she and Ms. Henson went to dinner at K-Paul's where they met
> Jennifer Johnson and her boss.  After dinner, Ms. Johnson joined Ms. Brown and
> Ms. Henson while Ms. Johnson's boss returned to his hotel; and the three women
> walked along Bourbon Street for a while.  Ms. Brown testified that Ms. Johnson
> suggested that they go to an Irish pub called Fahey's and that as they walked to
> Fahey's, a truck came up very suddenly.  Ms. Brown further testified that the
> passenger got out of the truck, held out a gun, and demanded the women's purses.
> She testified that the gunman pointed the gun away from her and that she heard
> a shot.  She then heard Ms. Johnson screaming that she had been shot.  The
> gunman, who did not get any of the women's purses, jumped into the truck which
> then drove away.  Ms. Brown testified that she described the assailant as being
> between fourteen and fifteen years old, short with a small build, and a medium
> complexion.  She could not provide a description of the driver of the truck.  She

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 4 of 10, Bill of Information, 1/16/97.

further testified that after she returned home to Indianapolis, she received a photographic lineup in the mail from which she selected Jackson's photograph. She admitted on cross-examination that she did not recall seeing a baseball cap, and she said that she did not remember seeing his teeth.

Sharon Henson testified at trial about having dinner with Ms. Brown and meeting Jennifer Johnson and her boss at K-Paul's. She also testified about how she and the other two women walked through the French Quarter and were on their way to an Irish pub when the pickup truck stopped and the passenger exited. The passenger, whom she described as a young, black male with a light complexion and armed with a gun, demanded the women's purses. Ms. Henson testified that Ms. Johnson was shot when she ran away and that she accompanied Ms. Johnson to the hospital. She also received a photographic lineup in the mail after she went home to Indianapolis, and she chose Jackson's picture. She stated that she did not recall anything particularly remarkable about the shooter's teeth and did not remember seeing a baseball cap.

John Fitzpatrick, who at the time of the shooting worked for the N.O.P.D., but who was a state trooper at the time of trial, testified that he composed the photographic lineup that was shown to Ms. Brown, Ms. Henson, and Ms. Johnson. As to the photographic lineup shown to Ms. Johnson, Trooper Fitzpatrick testified that she was able to exclude four of the six photographs; but he said that she was unable to decide between Jackson's picture and that of another man.

Jackie Walker testified at trial that on the evening of September 19, 1996, she went home while on a "lunch" break from her job as a technician for the N.O.P.D., and that as she returned to her car, she was approached by two men. She testified that the two men were on either side of her car and that the man on the driver's side, whom she said had dark skin, pulled out a gun and demanded her purse. She further testified that the other man, whom she said was slim, with lighter skin and a sandy-complexion, peered at her through the passenger side window. She gave her purse to the man with the gun; and she testified that as the two men ran away, the armed man gave her purse to the man with lighter skin. She testified that the two men wore handkerchiefs on the lower parts of their faces. She also testified that a few days after the robbery, she saw Jackson on the street and recognized him as the man who was peering into her car; and she said that he ran from the scene when he saw her. She also testified that she saw Jackson's picture in the newspaper in relation to the French Quarter incident before being shown the photographic lineup from which she chose his picture. She had been shown another photographic array prior to seeing Jackson's picture in the paper, but she did not identify anyone in that lineup. She could not explain why the police report listed the perpetrators ages as thirty and thirty-four, but she

said that it was wrong. She stated that the one without the gun was in his late teens or early twenties and that the one with the gun was in his thirties.

Officer Harry Stovall testified at trial that he responded to the call of the robbery of Ms. Walker, whom he described as hysterical, and that he broadcast a description of the robbers. He stated that he recorded the ages of the robbers as thirty-four and thirty years of age and that he got this information from Ms. Walker. He also testified that she told him she was on her way to her house, not leaving it, at that time of the robbery.

Detective Walt Towers of the homicide/robbery division testified at trial that he showed a lineup to Ms. Walker from which she could not make an identification. He testified that he shredded the lineup because it contained pictures of juveniles. He also testified that Ms. Walker told him that the robbers were between fifteen and seventeen years of age.

Jennifer Johnson, who was from Seattle, testified about meeting Ms. Brown and Ms. Henson at K-Paul's and walking to the Irish pub. She further testified that she heard the brakes of the pickup truck and then someone demanding the purses of her two companions. She testified that as she ran across the street to get away, she was shot in the eye, which she said had to be removed. Ms. Johnson further testified that while she was in the hospital she was shown a photographic lineup, but because she had a hard time with it, the police came back with an enlarged version of the lineup. She testified that she was able to narrow it down to two men, one of whom was Jackson. At trial, after stating that she was able to look at the shooter, she was asked if she saw anyone in the courtroom who looked like the person who shot her, and she pointed to the defendant.

Sergeant Michael Bossetta testified at trial that he responded to the shooting in the French Quarter and that he obtained a description that the shooter was five feet, six inches tall, weighed 130 pounds, wore a white T-shirt and baseball cap, and was small and very young.

Val Mae Patterson testified at trial that she lived at 933 Toulouse and that on the night of the shooting, in the French Quarter, she saw a pickup truck stop in the front of her house. She testified that she then saw the passenger, who was armed with a gun, approach three women and that she saw him shoot one of them. She testified that she told the police that the shooter was young, slim, five feet, seven to eight inches tall, and wearing a baseball cap. She admitted that she could not see the shooter's entire face, just his profile, and that the shooter was a little bit darker than Jackson. She testified that the driver of the truck was heavy-set.

Terrance Carter testified at trial that on the night of November 4, 1996, he had just left work at Pat O'Brien's and that he saw the shooting in the French Quarter. He denied that Jackson was the shooter and said that Lawrence James had admitted to him, when they were both in Parish Prison, that he was the one who shot Ms. Johnson.

Diane Denson testified at trial that on the night of November 4, 1996, Jackson was at her house from 8:00 p.m. and stayed there with her son until the following morning. He had been there with her son.

Jackson testified at trial that he had nothing to do with the shooting of Ms. Johnson or the robbery of Ms. Walker. He testified that he was at Ms. Denson's home on the night of the shooting; but he could not account for his whereabouts at the time of Ms. Walker's robbery. He also showed the jury that he had gold teeth.

Stephanie Hudson, a deputy sheriff, testified that she checked the records of Parish Prison and that the records showed that Terrance Carter and Lawrence James had not been incarcerated in the same sections of the prison although they were there at the same time.

State v. Jackson, 767 So.2d 981 (La. App. 4th Cir. 2000) (Table); State Record Volume 7 of 10, Louisiana Fourth Circuit Court of Appeal Opinion, 99-KA-0146, pages 2-6, June 21, 2000.

Jackson's first trial, held on August 18 and 19, 1997, ended in a mistrial when the jury was unable to reach a verdict.[4] He was tried before a different jury on December 8, 9 and 10, 1997, and was found guilty as charged on all five counts.[5] On April 24, 1998, the state trial court sentenced Jackson on the armed robbery and three attempted armed robbery counts to serve concurrent sentences of 25 years in prison; for attempted second

---

[4]St. Rec. Vol. 4 of 10, Trial Minutes (3 pages), 8/18/07; Trial Minutes, 8/19/97.

[5]St. Rec. Vol. 4 of 10, Trial Minutes (2 pages), 12/8/97; Trial Minutes (2 pages), 12/9/97; Trial Minutes (2 pages), 12/10/97; Verdict of the Jury (Count 1), 12/10/97; Verdict of the Jury (Count 2), 12/10/97; Verdict of the Jury (Count 3), 12/10/97; Verdict of the Jury (Count 4), 12/10/97; Verdict of the Jury (Count 5), 12/10/97; 0/97; St. Rec. Vol. 6 of 10, Trial Transcript, 12/8/97; St. Rec. Vol. 7 of 10, Trial Transcript, 12/9/97; St. Rec. Vol. 8 of 10, Trial Transcript (continued), 12/9/97; Trial Transcript, 12/10/97.

degree murder, the court sentenced him to 40 years in prison.[6] The sentences were to be served at hard labor without benefit of parole, probation, or suspension of sentence, and to run concurrently with the other sentences. On April 29, 1998, the court denied Jackson's motions for new trial and to reconsider the sentences.[7]

On direct appeal, Jackson's counsel raised asserted four errors:[8] (1) The state trial court erred in denying the motion to suppress the identification evidence. (2) The state trial court erred in limiting the cross-examination of Ms. Johnson. (3) The state trial court erred in not granting a mistrial based on the State's failure to turn over exculpatory evidence identifying another suspect, Bernell Collins. (4) The evidence was insufficient to support the jury's verdict on the identification element of the crimes charged.

On June 21, 2000, the Louisiana Fourth Circuit affirmed the conviction and sentence, finding no merit in the issues raised.[9] On June 15, 2001, the Louisiana

---

[6]St. Rec. Vol. 4 of 10, Sentencing Minutes, 4/24/98; St. Rec. Vol. 6 of 10, Sentencing Transcript, 4/24/98.

[7]St. Rec. Vol. 4 of 10, Minute Entry, 4/29/98; Motion to Reconsider Sentence, 4/29/98; Trial Court Order, 4/29/98; Motion for New Trial, 4/29/98; Trial Court Order (2), 4/29/98.

[8]St. Rec. Vol. 7 of 10, Appeal Brief, 99-KA-0146, 3/29/99.

[9]State v. Jackson, 767 So.2d at 981; St. Rec. Vol. 7 of 10, 4th Cir. Opinion, 99-KA-0146, 6/21/00.

Supreme Court denied without stated reasons the related writ application filed by Jackson's counsel.[10]

Jackson's conviction became final 90 days later, on September 13, 2001, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Almost five and one-half years later, on February 3, 2007, Jackson mailed an application for post-conviction relief to the state trial court alleging that he received ineffective assistance from his appellate counsel. Although the record does not contain a copy of this application, according to Jackson's pro se writ application later filed with the Louisiana Fourth Circuit, he mailed the application for post-conviction relief to the state trial court on February 3, 2007.[11] The state trial court denied Jackson's application on February 15, 2007, finding it untimely under La. Code Crim. P. art. 930.8(A), which

---

[10]State v. Jackson, 793 So.2d 1235 (La. 2001); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2000-K-2238, 6/15/01; La. S. Ct. Writ Application, 00-K-2238, 7/24/00; St. Rec. Vol. 7 of 10, La. S. Ct. Letter, 2000-K-2238, 7/25/00 (showing postmark 7/21/00).

[11]St. Rec. Vol. 10 of 10, 4th Cir. Writ Application, 2007-K-0338, p. 2, 3/20/07; see also, Rec. Doc. No. 13.

provided a two-year limitations period for the filing of applications for post-conviction relief.[12]

Jackson filed a writ application with the Louisiana Fourth Circuit arguing that his petition should have been addressed since he was not advised of the post-conviction prescriptive period at sentencing and that the trial court should have ordered the State to respond to the merits of his claim.[13] The Louisiana Fourth Circuit denied the application on March 20, 2007, finding that the application for post-conviction relief was untimely and that Jackson had no substantive right under La. Code Crim. P. art. 930.8(C) to file an untimely application, even if he did not receive the proper notice of the limitations period, citing State ex rel. Glover v. State, 660 So.2d 1189 (La. 1995). Jackson did not seek further review of this order.

II.    FEDERAL HABEAS PETITION

More than four years later, on November 3, 2011, the clerk of this court filed Jackson's petition for federal habeas corpus relief in which he does not specifically raise any grounds for relief. He instead refers this court to his attachments. The attached documents are related to his direct appeal, i.e. the unpublished opinion of the Louisiana Fourth Circuit, counsel's appeal brief, the State's response, counsel's post-appeal writ

_____

[12]St. Rec. Vol. 10 of 10, Trial Court Judgment, 2/15/07.

[13]St. Rec. Vol. 10 of 10, 4th Cir. Writ Application, 2007-K-0388, 3/20/07.

application to the Louisiana Supreme Court and the Louisiana Supreme's Court order denying that writ application. Reading his petition broadly, I find that Jackson intends to assert the same four claims presented by his counsel on direct appeal: (1) The state trial court erred in denying the motion to suppress the identification evidence. (2) The state trial court erred in limiting the cross-examination of Ms. Johnson. (3) The state trial court erred in not granting a mistrial based on the State's failure to turn over exculpatory evidence identifying another suspect, Bernell Collins. (4) The evidence was insufficient to support the jury's verdict on the identification element of the crimes charged.

The State filed a response in opposition to Jackson's petition, arguing that his petition was <u>not</u> timely filed under federal law and that Jackson is <u>not</u> entitled to equitable tolling.[14] The State urges that the petition must be dismissed as untimely.

III.    <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[15] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198

---

[14]Rec. Doc. No. 13.

[15]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Jackson's petition, which, for reasons discussed below, is deemed filed in this federal court on October 18, 2011.[16]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State correctly argues and I find that Jackson's petition was not timely filed in this court under the AEDPA and should be dismissed for that reason.

---

[16]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Jackson's petition was filed by the clerk of this court on November 3, 2011, when pauper status was granted. Jackson's signature on his petition was dated October 18, 2011. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[17]  Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  In this case, Jackson's conviction was final on September 13, 2001. Thus, under a literal application of the statute, Jackson had one year from the date his conviction became final, or until September 13, 2002, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only

---

[17]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
  (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
  A.       the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  B.       the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
  C.       the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
  D.       the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
  (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Jackson has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent. See Holland v. Florida, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner

diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-

conviction proceedings.  <u>Flanagan</u>, 154 F.3d at 199 n.1.  The Supreme Court has clearly

described this provision as a tolling statute.  <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because

this statute is a tolling provision, the time during which state court post-conviction

proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period.  Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL

609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  <u>Pace</u>, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)"); <u>Williams v. Cain</u>, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir.

1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies also are not other collateral review for purposes of the tolling calculation.

Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000); Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year AEDPA limitations period began to run in Jackson's case on September 14, 2001, the day after his conviction was final. The limitations period ran uninterrupted for 365 days, until September 13, 2002, when it expired. Jackson had no properly filed state post-conviction or other collateral review proceedings pending in any state court during that time period. In fact, the records contain nothing filed by Jackson until his application for post-conviction was submitted more than five years later on February 3, 2007. A filing made, however, after the AEDPA filing period has expired

does <u>not</u> afford him any tolling.[18]  <u>See</u> <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000).

The record also reflects that Jackson allowed another substantial period of time of more than four and one-half years to lapse between completion of his state post-conviction efforts and the submission of this federal petition.  His federal habeas corpus petition is clearly time-barred and must be dismissed for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Darcelle Jackson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

---

[18]Although the AEDPA filing period is shorter than that for post-conviction relief under state law, any conflict does not render the AEDPA unconstitutional and does not provide a basis for habeas corpus relief or equitable tolling.  <u>See,</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Ellis v. Martin</u>, 202 F.3d 281, 1999 WL 1101241 at *3 (10th Cir. Dec. 6, 1999) (Table, Text in Westlaw).

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[19]

New Orleans, Louisiana, this ___15th___ day of March, 2012.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[19]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.